**NATIONAL UNION INSURANCE COMPANIES OF PITTSBURGH, PENNSYLVANIA, a Corporation, Plaintiff-Appellant,**

v.

**INLAND CRUDE, INC., Leasing, Inc., and Home Indemnity Company, a Corporation, Defendants-Appellees.**

No. 119-70.

United States Court of Appeals,
Tenth Circuit.

Oct. 30, 1970.

William K. Stratvert, Albuquerque, N. M. (Keleher & McLeod, Albuquerque, N. M., on the brief) for plaintiff-appellant.

C. LeRoy Hansen, Albuquerque, N. M. (Kendall O. Schlenker, and Civerolo, Hansen & Wolf, Albuquerque, N. M., on the brief) for defendants-appellees.

Before BREITENSTEIN, Senior Circuit Judge, SETH, Circuit Judge, and TEMPLAR, District Judge.

TEMPLAR, District Judge.

This is a declaratory judgment action brought by appellant National Union Insurance Companies to have determined that the coverage afforded by an insurance policy written for appellee Inland Crude, Inc., did not extend to the appellee under the facts and circumstances involved in a suit filed in the New Mexico State Court by appellees, Leasing, Inc., and Home Indemnity Company, its insurer, against appellee Inland Crude, Inc.,

---

because of an exclusion contained in the policy. National Union defended the suit in the state court under a reservation of rights and then filed the present declaratory judgment action. The trial court denied the declaratory relief sought, entered judgment for appellees, and this appeal was taken.

On January 1, 1964, Daniel Allee, an employee of Inland Crude, hauled a load of drip gas from Bloomfield, New Mexico to McDougall's Phillips 66 bulk plant near Moab, Utah, where the drip gas was to be transferred from the Inland Crude truck tank to the tank of another truck parked at that site, which was owned by Leasing, Inc., and had been leased to the McDougall Oil Company. When Allee arrived at the site in the late afternoon no one else was present and he undertook to transfer the drip gas from the Inland Crude truck to the truck owned by Leasing, Inc. The trial court found that it was the employee's usual practice to unload into a storage tank by himself, although it was unclear just what the usual procedure was when he unloaded into a truck tank because the practice varied, depending upon a variety of circumstances.

The transfer procedure entailed hooking the hoses carried on the Inland Crude truck onto the Leasing truck and opening the valves and dome lids on the Leasing truck. The pumping power needed to effectuate the transfer was furnished by the engine on the Inland Crude truck, so its motor was left running. As Allee opened the dome lids on the Inland Crude truck tank to allow air to go in and replace the drip gas being pumped out, the drip gas bubbled up and began running down the side of the truck. Allee attempted to shut the dome lid on the Inland Crude tank but the pressure was so great that he could not close it. The gas caught fire and an explosion ensued which totally destroyed the tractor and tank trailer owned by Leasing, Inc. The facts set forth above are essentially the facts found by the trial court which are not now challenged as being erroneous or contrary to the evidence in the record.

The policy of insurance in question provided property damage liability coverage and the coverage applied to loading and unloading operations. The insurance policy contained a number of exclusions, one of which provided, as follows: "(h) Under Coverage B, to injury to or destruction of property * * * *in charge of* the insured * * * *"* (Emphasis added.) It is this exclusion which gave rise to the controversy in question.[1]

The main issue before the trial court and this Court is whether or not the employee of appellee Inland Crude was "in charge of" the tractor and tank trailer owned by appellee Leasing, Inc., so as to make the exclusion clause applicable under the facts and circumstances of the present case and relieve appellant from liability.

In the trial court appellant contended that Allee, the employee of Inland Crude, was "in charge of" the Leasing, Inc., vehicle because he was the only person at the scene and that it was necessary for him to have charge of both vehicles in order to undertake the somewhat dangerous procedure of transferring the volatile drip gas from one tank truck to another. On the other hand, the appellees contended that the employee's act of opening the intake valve and hatch on the

1. The pertinent insuring agreement of the policy reads, as follows:

"Coverage B—Property Damage Liability—Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or the use of any automobile."

Exclusions relied upon are:

"(h) Under Coverage B, to injury to or to destruction of property owned or transported by the insured, or property rented to or in charge of the insured other than a residence or private garage injured or destroyed by a passenger automobile covered by this policy."

tank of the Leasing vehicle was not sufficient to support a finding that he was in charge of the tractor and trailer; that the motor of the Leasing truck was not running; that the employee did not have the keys to that truck; and that it was not necessary for the employee to operate the Leasing truck in order to transfer the drip gas, so that the destroyed equipment was merely incidental to the performance of his work of unloading the insured vehicle of Inland Crude and thus was not in his charge. The trial court held that the insurance policy extended coverage to Inland Crude and denied the declaratory relief sought by appellant. In its Memorandum Opinion, the trial court relied on two cases, Maryland Casualty Company v. Jolly's Welding Service, 67 N.M. 101, 352 P.2d 1013, and Maryland Casualty Company v. Hopper, 237 S.W.2d 411 (Tex.Civ.App.). At pages 3 and 4 of the Memorandum Opinion, the court held:

"New Mexico has adopted the rule that the insured must be working directly upon an object which is damaged in order for it to be in his care, custody or control (i. e., in his charge), and thus within the exclusion clause of a liability policy. Maryland Cas. Co. v. Jolly, 67 N.M. 101, 352 P.2d 1013 (1960). The *Jolly* case further holds that where the damaged property or premises are merely incidental to the contracted object upon which work is being performed by the insured, such property is not within the care, custody or control of the insured even though he might be permitted access thereto during the performance of his contract.

"An important distinction found in the cases cited in support of the rule in the *Jolly* case is based upon the quality of the damaged property as either real or personal property. [Citations omitted.] Where the property damaged partakes of the nature of real property, it has been held not to be in the care, custody or control of the insured. Maryland Cas. Co. v. Hopper, 287 [237] S.W.2d 411 (Tex., 1950).

\* \* \* \* \* \*

"The Leasing, Inc., tank truck in the present case is analogous to a storage tank located upon the premises into which could be transferred drip gas. The same or equivalent actions would have to be performed upon such a tank to transfer the gas as were performed upon the tank truck in the present case.

"It is concluded that the Leasing, Inc., tank truck was more in the nature of real property in the circumstances of the present case and was not personal property that was either bailed to or turned over to Inland's employee to such an extent that he could be said to have been in charge of it."

On appeal the appellant contends that it was necessary for Inland Crude's employee to have supervision of both vehicles for the purpose of transferring the drip gas because of its dangerous propensities; that no one else was present at the time the employee prepared to unload the gas; that the employee was working directly on the trucks by connecting hoses to and opening valves and dome lids on both vehicles; that it was necessary for him to climb upon both trucks; and that there was no doubt but that he had the permission of all parties involved to engage in this activity and had control over the process. The appellant also contended that it is not necessary to have a bailment situation in order for the exclusion clause to come into play.

The insurance policy in question covered the unloading operations which were taking place at the time the explosion occurred and the policy affords coverage unless it was established that appellee's employee, Allee, had charge of the tank truck belonging to Leasing, Inc. Although Inland Crude's employee performed some of his acts directly on the Leasing, Inc., tank truck, he was not "in charge of" that tank truck within the meaning of the phrase as used in the insurance policy. The acts the employee performed upon the Leasing tank truck were merely incidental to effectuating

the transfer of drip gas from one truck to the other. The employee was not performing any act on the Leasing tank truck at the time of the explosion. Inland Crude's employee did not have the keys to the Leasing truck and, therefore, he could not move or operate the truck. The truck was stationary and as the trial court held, the same or equivalent actions would have to be performed in connection with a storage tank, as in the case of Maryland Casualty Company v. Hopper, 237 S.W.2d 411 (Tex.Civ.App.).

Appellant correctly points out in his reply brief that in determining whether property damaged was at the time "in charge of" the insured, it must be found that the damaged property was under the supervision of the insured at the time of the accident, that it was a necessary element of the work involved, and that it was being directly worked on by the insured. Under such tests, we must sustain the trial court's determination that the damaged tank truck was not being worked on by the insured and it was not under the supervision of the insured at the time of the accident.

This being a diversity action, we are bound to apply the law as announced by the New Mexico Court. The United States District Court for the District of New Mexico in effect sat as another state court insofar as the application of the substantive law of New Mexico relates to the issues involved.

This Court adheres to the rule that it will accept a federal trial judge's interpretation of state law unless convinced that such interpretation is clearly erroneous. Parsons v. Amerada Hess Corp., 10 Cir., 422 F.2d 610; Bartch v. United States, 10 Cir., 330 F.2d 466. Cf. Goodyear Tire & Rubber Co. v. Jones, et al., 10 Cir., 433 F.2d 629, filed October 9, 1970.

We have examined the briefs filed by the parties and have read the cases and annotations cited therein. Many of the cases cited by the appellant involve bailment situations, but there is no evidence of a bailment of the Leasing tank truck to Inland Crude or its employee here. Under the facts of this case, this Court cannot say that the Leasing, Inc., tank truck was "in charge of" the Inland Crude employee so as to bring it within the exclusion clause contained in the insurance policy.

The trial court's decision is supported by the record and the authorities, and we cannot conclude that the trial court's decision is clearly erroneous. This is a case involving the interpretation of the law as disclosed by the New Mexico court, and there appears to be only one decision involving the issue here in question, and that is the Jolly case.

We hold that the trial court's determination of state law as applied to the present case was properly made, and there is no reasonable basis upon which to reverse its findings and judgment.

The judgment of the trial court is therefore

Affirmed.